# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7554 | **DATE** | 8/1/2002 |
| **CASE TITLE** | Herbert Taylor and Renee Taylor vs. ADS, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion for summary judgment (Doc. No. 9-1) is granted. Defendants' motion to strike (Doc. No. 24-1) is denied as moot. For the reasons explained above, the court concludes that Herbert Taylor was not employed by any of the Defendants. His claim of race discrimination in employment is, therefore, dismissed. Mrs. Taylor was a party to a contract with Defendant Area, but the evidence does not support an inference that Area violated her right to make and enforce contracts on the basis of race. Her claim under 42 U.S.C. § 1981 is dismissed without prejudice to further proceedings in state court.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | AUG - 2 2002 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | 34 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 8/1/2002 | | |
| | | | date mailed notice | | |
| ETV | courtroom deputy's initials | | ETV | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

DONATED
AUG 2 2002

HERBERT TAYLOR and )
RENEE TAYLOR, )
)
Plaintiffs, )
)
v. )            No. 00 C 7554
)
ADS, INC., an Indiana Corporation, )
d/b/a Area Transportation Co.; Western )      Judge Rebecca R. Pallmeyer
Intermodal Systems, an Illinois )
Corporation, )
)
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Renee Taylor owned a truck for several years. Pursuant to an independent contractor agreement, Mrs. Taylor provided Defendant Area Transportation Co. ("Area"), a trucking service, with a truck and a driver – her husband, Plaintiff Herbert Taylor -- in return for a percentage of the revenue generated by Mr. Taylor's services. In December 1999, a dispute arose concerning amounts due under the agreement, and Mr. Taylor determined that the truck needed certain repairs. By January 21, 2000, Area terminated the agreement.

On December 1, 2000, Renee and Herbert Taylor, both African-Americans, filed this lawsuit against Area and two related companies, Alternative Distribution Systems ("ADS"), and Western Intermodal Services, Ltd., alleging race discrimination under Title VII and 42 U.S.C. § 1981. Defendants now move for summary judgment, arguing that neither Plaintiff was ever employed by any of the Defendants and that there is no evidence of a violation of § 1981. For the reasons explained here, the motion is granted.

## FACTS

Defendant Area Transportation enters into Independent Contractor Service Agreements with individuals and companies who lease trucks, tractors, and trailers and furnish drivers to Area

34

in return for a percentage of the revenue Area earns from the equipment. (Defendants' Rule 56.1 Statement ¶¶ 19, 20.)[1] Beginning in 1991, Area Transportation entered into agreements of this nature with Plaintiff Renee Taylor. (Id. ¶ 21.) The most recent such agreement, dated August 30, 1999, like the earlier ones, listed Mrs. Taylor's husband, Plaintiff Herbert Taylor, as her "authorized representative." (Id. ¶ 22.) Mrs. Taylor, a school teacher, owned the truck leased to Area but did not perform any other services for Area and does not know how to drive a truck. (Id. ¶¶ 24-26.) Instead, she intended for Herbert Taylor to be the driver. (Id. ¶ 33.) Mr. Taylor began driving for Area under this arrangement in September 1992 and was assigned to work at Western Intermodal, a corporation which, like Area, is a subsidiary of Defendant ADS. (Pltfs.' Additional Facts ¶ 69; Defendants' 56.1 ¶ 9.) Mr. Taylor notified supervisors at Western Intermodal when he needed to take vacation time. (Pltfs.' Additional Facts ¶ 70.)

The Independent Contractor Service Agreement between Mrs. Taylor and ADS provides that it is "intended by the parties to create the relationship of Independent Contractor and not of employer/employee" and that "[e]ither party may, at its option in writing to the other, terminate this Agreement." (Independent Contractor Service Agreement (hereinafter, "Agreement"), Ex. B to Renee Taylor Dep., Tab 2 of Appendix to Defs.' 56.1 Statement, §§ IV, VIII.) The Agreement provides, further, that as a contractor, Mrs. Taylor was responsible for the costs of operating the truck, including maintenance, repairs, fuel, tires, insurance and license plates, as well as all costs involved in employing drivers, including wages, withholding, Social Security contributions, and the like. (Agreement, ¶ 5.) She estimates that she spent between $12,000.00 and $15,000.00 per year to maintain her truck. (Defs.' 56.1 ¶ 31.)

Area wrote checks on a weekly basis payable to Renee Taylor, in amounts based on the number of hours Mr. Taylor drove the truck. (Id. ¶ 35; Renee Taylor Dep. at 58:1-19; Raymond

---

[1]      Plaintiff characterizes these and other statements as "irrelevant" but has not denied them in the manner called for by this court's Local Rule 56.1. The court deems them admitted.

Major Dep., Appendix 1 to Plaintiff's 56.1 Response, at 23:3 - 24:19; Pltfs.' Additional Facts ¶¶ 84, 90.). Area did not withhold any amounts from those checks for income taxes or Social Security, and the amounts were reported on an IRS Form 1099, not on a W-2. (Defs.' 56.1 ¶¶ 38,39, 41.) Plaintiffs assert that Herbert Taylor was a member of Area's employee credit union, group insurance plan, employee quarterly bonus plan, and worker compensation plan. (Pltfs.' Additional Facts ¶ 87.) Defendants deny this and contend that Mrs. Taylor "was permitted to participate in [these benefit plans] pursuant to her contract." (Defs.' Response to Pltfs.' Additional Facts ¶ 87.) The court notes that neither party has submitted any documentary evidence in support of their position on this issue: Plaintiffs present no copies of any group insurance plan or employee credit union account documents, for example. Nor did this court find any reference to such plans in the copy of the contractor agreement between Renee Taylor and Area that Defendants submitted in support of this motion.

Mrs. Taylor understood that in order for her to continue leasing the truck to Area, the truck was required to pass a quarterly safety inspection and needed to be properly licensed. (Defs.' 56.1 ¶ 32.) From June 30, 1999 through August 30, 1999, the truck was in need of repairs and its license had expired. (Renee Taylor Dep. at 54:11-23.) In addition, a back injury rendered Mr. Taylor unable to drive during this period. (Herbert Taylor Aff. ¶ 50.) On his return, Area required him to undergo procedures to establish his qualifications as a driver. (Pltfs.' Additional Facts ¶ 85.) On August 17, 1999, Mr. Taylor completed Area's "Qualification Information Form" to demonstrate his qualifications to drive a commercial vehicle. (Ex. 1 to Herbert Taylor Aff.) At the top of the form, a checkmark appears in the blank for "Independent Contractor Driver," rather than the ones for "Company Driver" or "Independent Contractor." Plaintiffs deny that Mr. Taylor checked that box himself, but it is undisputed that the box was checked when he completed the form. (Herbert Taylor Dep., Tab 3 of Appendix to Defs.' 56.1 Statement, at 67:22.) On August 30, 1999, Mrs. Taylor entered into a new Agreement with Area. (Defs.' 56.1 ¶ 21.)

In December 1999, Mr. Taylor took the truck in for an inspection and was advised that he needed tire and brake repairs. (Herbert Taylor Dep. at 48:4-15, 49-50:7-23.)[2] Mr. Taylor estimates the repairs would have cost $500 or $600 (*id.* 55:23 - 56:5), but Mrs. Taylor was on medical leave from her teaching job at the time and was financially unable to pay for the repairs. (Defs.' 56.1 ¶ 46, citing Renee Taylor Dep. at 80-81), and the repairs were not made until several months later. (Herbert Taylor Dep. at 55:23 - 56:15.) Defendants assert that Area terminated the Agreement on January 21, 2000 (Defs.' 56.1 ¶ 45); Plaintiffs contend that the termination actually occurred as of December 30, 1999, when Area refused to make a disputed payment for Mr. Taylor's services, described more fully below. (Pltfs.' 56.1 Response ¶ 45; Pltfs.' Additional Facts ¶ 88.) Neither party has furnished a copy of the written termination contemplated by Section VII of the Agreement, but the court concludes there is no dispute that it was in fact terminated at or near the beginning of 2000.

Herbert Taylor was not employed from December 1999 until at least May 1, 2000, but he did not apply for or receive unemployment compensation. (Pltfs.' 56.1 Response ¶ 47.) In May 2000, Mr. Taylor purchased a truck and, since July 2000, he has driven the truck as an independent owner-operator for HJR Trucking. (Defs.' 56.1 ¶ 48.)

John Noel is a white male who drives a truck for Area. (*Id.* ¶ 52.) Defendants characterize him as an "owner-operator of a truck having an Independent Contractor Service Agreement with Area." (*id.*), but the evidence they cite consists only of the affidavit of Raymond Major; no copy of the Agreement appears in the record. Plaintiffs believe Mr. Noel is "employed by Area" (Pltfs.' 56.1

---

[2]     Plaintiffs deny that the truck was due for its quarterly inspection in December 1999, but the court notes that Mr. Taylor testified he did take the truck for an inspection at that time. (Herbert Taylor Dep. at 49.) He also acknowledged that he knew that if the repairs were not made, the truck would not pass its quarterly inspection. (*Id.* at 48: "I wanted brakes. It was time for tires. And I knew if I'd have rode in like that, it wouldn't have passed.") Mr. Taylor also acknowledged that Raymond Major of Area told him the truck would have to pass inspection before Taylor could "go back to work" for Area. (*Id.* at 51.)

Response ¶ 52) but they also admit that John Noel and Herbert Taylor "were the only *owner-operator drivers* who did shuttle work out of Western Intermodal's warehouse in December of 1999." (*Id.* ¶ 53, emphasis supplied.) Mr. Noel completed an application for work as a "driver" in March 1984 (Pltfs.' Additional Facts ¶ 98, citing Application, Ex. A to Affidavit of Attorney Macarthur Drake, in support of Pltfs.' Additional Facts), but as of April 1999, Defendants' records characterize him as an independent contractor rather than as a company driver. (Termination Checklist, Ex. D to Drake Aff.)

Both Noel and Taylor drove on Mondays through Fridays: Noel on a 6:00 a.m. to 3:00 p.m. shift and Taylor from noon to 8:00 p.m. (Pltfs.' 56.1 Response ¶ 54.) Like Taylor, Noel did not receive a salary, wages, or a W-2 form; Noel was paid for his services as an independent contractor, as reflected on an IRS Form 1099. (Defs.' 56.1 ¶ 57.) Without offering any details concerning dates, times, or circumstances, Mr. Taylor complains that Mr. Noel "sat in his truck doing nothing" while Mr. Taylor himself did "all the work," resulting in additional wear and tear on the truck that Mr. Taylor drove. (Pltfs.' Additional Facts ¶¶ 72-74.) On an unidentified date in 1999, Plaintiff complained to Area's managers about the fact that Robert Kearney had assigned more work to Mr. Taylor than to John Noel but had refused to authorize extra work for Mr. Taylor, as he had for Noel. (Pltfs.' Additional Facts ¶ 79.) In response to the complaint, Kearney's supervisor promised to address this problem and told Mr. Taylor he was considering a change in the basis on which Taylor and Noel were compensated, from a rate per hour to a rate per load; such a change never occurred. (*Id.* ¶ 80)

Again without any specifics, Plaintiffs assert that Western Intermodal's managers gave Mr. Noel preferential treatment with respect to "vacation requests, work assignments, extra work, [and] bonus pay opportunities," but they offer no documentary evidence (such as pay stubs or time records) in support of this assertion. (Pltfs.' Additional Facts ¶ 71, citing Herbert Taylor Aff. ¶ 11.) Plaintiffs do cite the affidavit of Mr. Taylor, but that document does not demonstrate that Mr. Taylor

has any first hand knowledge concerning Noel's vacation requests, work assignments, or bonus pay. Defendant has presented evidence that for Mr. Taylor's services, Area paid Mrs. Taylor $43,995.34 in 1998 and $52,588.45 in 1999, reflected on IRS Form 1099. (Defs.' 56.1 ¶ 55.) Mr. Noel was paid $71,057.79 in 1998 but only $48,017.13 in 1999. (*Id.* ¶ 56.) Plaintiffs note that Mr. Noel lost three months of work in 1999 due to a hand injury. (Plfs.' 56.1 Response; ¶ 56; Pltfs.' Additional Facts ¶ 99, citing Area's driver records, Ex. C and D to Drake Aff.).

In December 1999, a dispute arose concerning approximately $2600.00 that Mrs. Taylor believes Area owes her under the Agreement, for work Mr. Taylor performed during the last two weeks of 1999. (Defs.' 56.1 ¶ 60; Pltfs.' Additional Facts ¶ 91.) Without these funds, Plaintiffs contend, they were unable to pay for the repairs necessary for the truck's "future use." (Pltfs.' Additional Facts ¶¶ 78, 88, 96.) Plaintiffs believe the pay discrepancy is a function of race discrimination in Mr. Taylor's employment and in Mrs. Taylor's contractual relationship with Area. (Pltf.'s 56.1 Response ¶ 63, 67.) When Mrs. Taylor arrived at Area's office on December 30, 1999 to pick up the weekly check, Mr. Major kept her waiting a long time, and then instructed her to go to Area's payroll department though he knew there was no check waiting for her there. (Pltfs.' Additional Facts ¶¶ 93, 94.)

In addition, Mrs. Taylor believes she suffered discrimination in an incident in 1998 when Robert Kearney, an Area manager, moved the truck without her permission, had an accident with it, and told Mr. Taylor not to report the accident. (Pltfs.' Additional Facts ¶ 66.) Finally, Mrs. Taylor contends she was discriminated against when Mr. Taylor received less favorable job assignments and bonus pay than did John Noel. (Pltfs.' Additional Facts ¶¶ 66, 92.)

## DISCUSSION

Plaintiffs allege that Defendants have discriminated against both of them on the basis of their race. They claim that Defendants discriminated against Herbert Taylor in his employment,

in violation of Title VII and 42 U.S.C. § 1981, and against Renee Taylor in her contractual relationship with Defendants, also in violation of 42 U.S.C. § 1981. As Defendants note, these claims are arguably inconsistent: If Mr. Taylor was directly employed by the Defendants, then his wife had no genuine contractual relationship with Defendants. If, on the other hand, Mrs. Taylor's independent contractor status is recognized, then she, not Mr. Taylor, has rights and duties under her contract and he is not an employee protected by Title VII. As explained below, the court concludes Mr. Taylor was not an employee of Defendants and that Mrs. Taylor has not presented evidence creating an inference of race discrimination in her contractual dealings with Defendants.

**Herbert Taylor was not Employed by Defendants**

Arguing that Plaintiff Herbert Taylor was in fact employed by Defendants, Plaintiffs characterize the contractual relationship between Renee Taylor and Area as an "arrangement initiated by Area" and assert that checks were made payable to her rather than to Herbert Taylor "for Area's own purposes." (Pltfs.' Rule 56.1 Response ¶¶ 21, 35.) Having reviewed the parties' submissions, the court concludes there are no factual material disputes and that Herbert Taylor was not, as a matter of law, an employee of any of the Defendants. Mr. Taylor drove a truck for Western Intermodal, a corporation that, like Area, is wholly owned by Defendant ADS. He received work assignments from managers at Western Intermodal and complied with those managers' directions concerning work hours and vacation time. These circumstances presumably led Mr. Taylor and his wife to believe he was an employee of Western Intermodal. Any such subjective belief is defeated by the undisputed facts, however: Area wrote weekly checks for Mr. Taylor's services and the use of the truck, but those checks were not paychecks; there was no withholding of income tax or Social Security contributions, and the annual totals were reported to IRS on a Form 1099, the form used for independent contractor payment reporting, not the W-2 form appropriate for wages and salaries. When Mr. Taylor returned to duty after an injury leave, Area

required him to complete a document verifying his qualifications to drive a truck. A check mark appears on that form in the space for "independent contractor driver," rather than "independent contractor" or "company driver." Plaintiffs insist Mr. Taylor himself did not make the check mark on the form; but they do not dispute that the mark appeared on the form at the time he signed it, and there is no evidence that Mr. Taylor ever objected to this characterization of his status.

Plaintiff Renee Taylor also executed a document that is inconsistent with the notion that Mr. Taylor was employed by Area or Western Intermodal. That document, the Independent Contractor Service Agreement between Mrs. Taylor and Area Transportation Company, required Mrs. Taylor to bear the expense of maintaining and operating the truck her husband drove, including the cost of repairs, fuel, tires, insurance, and license plates. She did spend $12,000 to $15,000 per year to meet this obligation. Under the Agreement, Mrs. Taylor also contracted to furnish a driver to Area. The Agreement explicitly imposes on Mrs. Taylor the obligation to pay Mr. Taylor's wages and to perform appropriate withholding of income taxes and Social Security contributions. Most significantly, Area's weekly checks were written to Renee Taylor, the truck's owner, not to Herbert Taylor. Indeed, when a dispute arose in December 1999 concerning the payment due for Herbert Taylor's services, it was Mrs. Taylor, not Mr. Taylor, who arranged a meeting with Area's manager to discuss the matter. No matter how stable and lengthy any marriage may be, there simply is no legal basis for an employer to write paychecks to the employee's spouse. The court concludes that Mr. Taylor was not employed by any of the Defendants.[3]

**There was No Disparate Treatment**

Even if the court were to conclude that Mr. Taylor is an employee of Defendants, the evidence would be insufficient to support his claim of disparate treatment. Where a plaintiff alleges

---

[3]     Nor would there be any support for the notion that Renee Taylor herself was an employee. Area's checks made no withholding for Renee Taylor's income tax obligation either. And Mrs. Taylor freely acknowledges that she does not drive a truck.

discriminatory treatment, he must demonstrate that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly-situated employees outside of his protected class more favorably. *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 347 (7th Cir. 1997); *Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1132 (7th Cir. 1994). Plaintiffs compare Mr. Taylor's situation to that of one other driver, John Noel. They complain that Mr. Noel received preferential treatment, but they present no evidence other than Mr. Taylor's general beliefs on this issue. Numerous cases from our Court of Appeals explain that such self-serving generalizations, without factual support in the record, are insufficient to defeat summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993). Rule 56 requires more than bald general assertions, *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998), and although an affiant's "personal knowledge" may include inferences and opinion, those inferences must be sustained by specific facts. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988). [4]

Plaintiffs have offered no specifics in support of this disparate treatment claim – no dates, times, places, or circumstances in which Mr. Noel received more favorable driving assignments. The sketchy evidence that does appear in the record suggests Mr. Taylor and Mr. Noel were not

---

[4]      Another court in this district has cataloged the types of evidence that a court must disregard on summary judgment as follows:

> 1) conclusory allegations absent supporting evidence, *DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999); *Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998); 2) legal argument, *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); 3) self-serving statements without factual support in the record, *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999); *U.S. ex rel. Small Bus. Admin. v. Torres*, 142 F.3d 962, 968 (7th Cir. 1998); 4) inferences or opinions not "grounded in observation or other first-hand experiences," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991); and 5) mere speculation or conjecture, *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

*Smith v. Allstate Ins. Corp.*, No. 99 C 4240, 2001 WL 1104713, *6 (N.D. Ill. Sept. 18, 2001) (Guzman, J.)

similarly situated in all respects. Mr. Noel began driving for Defendants in 1984, eight years before the Taylors' relationship with Area began. Mr. Taylor was an independent contractor driver; Mr. Noel was either employed directly by Area, as Plaintiffs contend, or was an independent contractor, as Defendants urge (and as Plaintiffs have conceded, Pltfs.' 56.1 Response ¶ 53); in either case, he did not have the same classification as Herbert Taylor. Although their hours overlapped, the two drivers were assigned to different shifts. These differences might well explain the differences in their job assignments, had Plaintiff provided greater detail concerning the dates, times, and job assignments at issue. The undisputed evidence concerning the amounts paid for these two drivers does not support an inference of disparate treatment: Mr. Noel was paid more than Mrs. Taylor in 1998, but in 1999, when both drivers were on injury leave for more than two months, Mrs. Taylor was paid more than Mr. Noel. The court concludes that, even if Mr. Noel can be viewed as a comparative, the evidence does not support an inference of disparate treatment.

**Discrimination in Contractual Relations**

Defendants do not challenge Renee Taylor's standing to sue them for contractual violations. They urge, however, that the dispute between Area and Mrs. Taylor is a simple breach of contract matter that should be resolved in state court. This court agrees. Mrs. Taylor is an Illinois resident. Because Western Intermodal Systems is an Illinois corporation, its presence as a Defendant in this case destroys the complete diversity required under *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). The court notes that in the caption to their pleadings, Defendants characterize Area as a name under which ADS, Inc., an Indiana corporation, does business. Even if the dispute is viewed as one solely between Mrs. Taylor and Area Transportation, diversity jurisdiction is unavailable here because less than $75,000.00 is in controversy: Defendants contend that only $2600.00 is in issue; Plaintiffs disagree, but they suggest their claim is in the range of $26,000.00, still far less than the jurisdictional requirement.

To the extent Mrs. Taylor believes race discrimination infected Area's dealings with her, she does have a claim that arises under federal law. Section 1981 provides, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). To succeed on a claim under this section, Mrs. Taylor must prove that (1) she is a member of a racial minority; (2) Defendants intended to discriminate against her on the basis of her race; and (3) the discrimination concerned the making and enforcing of a contract. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Elements (1) and (3) are undisputed here; but Defendants urge that there is no evidence of intentional discrimination. Certainly Mrs. Taylor believes Area has breached its contractual obligations to her and has treated her improperly and unfairly. The evidence does not support an inference that the actions of which she complains were based on race, however. To the extent that Mrs. Taylor believes Area discriminated against her by assigning more work assignments to Mr. Noel than to Mr. Taylor, the court adopts its discussion of that issue that appears above, and dismisses this claim for the same reasons.

Mrs. Taylor also urges that Area discriminated against her in other ways. She asserts that Mr. Kearney drove her truck on an unspecified date in 1998, had an accident, and directed Mr. Taylor not to report the accident. There is no information in the record concerning the damage, if any, to Mrs. Taylor's truck as a result of this accident, nor can the court determine whether Area paid for the repairs or otherwise compensated her for the damage. More importantly, there is no basis in this record for the court to infer that Mr. Kearney or Area would have behaved differently if he had been involved in an accident with a truck owned by a white contractor. In short, the court is unable to conclude that Mr. Kearney's conduct, whether or not it was proper, was motivated by race.

The court reaches the same conclusion with respect to the remaining dispute, that involving amounts unpaid for Mr. Taylor's work in late December 1999. When Mrs. Taylor went to the Area

office to collect this money, she asserts, she was treated shabbily and left waiting without explanation. Without condoning the alleged rudeness, the court notes that Plaintiffs have offered no evidence that would support an inference of race discrimination concerning this matter, either. The parties disagree in good faith concerning Area's calculations, but there is no indication that Area made those calculations, or any decisions concerning reimbursement for Mr. Taylor's time, on any basis other than the basis on which it made decisions concerning white drivers. It appears from the record that Mrs. Taylor had been engaged as an independent contractor for Area for several years, and had been paid during those years apparently without incident. These circumstances, while not dispositive, cast doubt on the notion that this single pay dispute was a function of Mrs. Taylor's race. There is a genuine dispute between the parties concerning this issue, but the court concludes it is a matter of state law, and does not represent a violation of 42 U.S.C. § 1981.

When a federal court has dismissed all the claims over which it has subject matter jurisdiction before trial, the court ordinarily declines to exercise jurisdiction over any remaining state law claims. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 766 (7th Cir. 2001). This case is dismissed without prejudice to Mrs. Taylor's breach of contract claims, which she is free to pursue in state court.

## CONCLUSION

Defendants' motion for summary judgment (Doc. No. 9-1) is granted. Because the court has not considered the submissions of any party that are not supported by evidence as required by this court's rules, Defendants' motion to strike (Doc. No. 24-1) is denied as moot. For the reasons explained above, the court concludes that Herbert Taylor was not employed by any of the Defendants. His claim of race discrimination in employment is, therefore, dismissed. Mrs. Taylor was a party to a contract with Defendant Area, but the evidence does not support an inference that

Area violated her right to make and enforce contracts on the basis of race. Her claim under 42 U.S.C. § 1981 is dismissed without prejudice to further proceedings in state court.

ENTER:

Dated:  August 1, 2002

REBECCA R. PALLMEYER
United States District Judge